IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF CHELSEA M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CHELSEA M., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
THERESA R., APPELLANT.

Filed December 17, 2013.    No. A-13-419.

Appeal from the County Court for Hall County: ARTHUR S. WETZEL, Judge. Affirmed.

Lawrence G. Whelan and Dennis G. Whelan, of Whelan Law Office, for appellant.

Sarah A. Hinrichs, Deputy Hall County Attorney, for appellee.

Stacie A. Goding, of Myers & Daugherty, P.C., guardian ad litem.

IRWIN, PIRTLE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Theresa R. appeals from an order of the county court for Hall County, Nebraska, sitting as a juvenile court, which adjudicated one of her children, Chelsea M., to be a juvenile as defined in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). On appeal, Theresa asserts that there was insufficient evidence to warrant the adjudication of Chelsea pursuant to § 43-247(3)(a). Upon our de novo review of the record, we find sufficient evidence to support the county court's finding that it had jurisdiction over Chelsea, and we affirm the order to adjudicate her under § 43-247(3)(a).

## II. BACKGROUND

On November 2, 2011, Chelsea, who was 16 years old, told her mother, Theresa, and her stepfather, Stacey R., that she was pregnant. Theresa and Stacey were very upset with Chelsea

and proceeded to engage in an extremely heated and physical argument with Chelsea and Chelsea's boyfriend, Alex H. After this argument, Chelsea had various bruises on her chest and other parts of her body. In addition, Chelsea had a black eye.

On November 7, 2011, Chelsea told her school counselor, and later told law enforcement personnel, that her injuries were a result of Stacey's physically assaulting her after he learned of her pregnancy. Chelsea reported that on the night of November 2, Stacey pushed her into a chair; slapped her in the face multiple times; called her stupid; pushed a heavy, "pottery" vase off of a table and toward her face; and "slammed" her up against a wall. Chelsea reported that Theresa was present during these incidents and did not intervene to protect her.

As a result of Chelsea's reports of abuse, the State filed a petition in county court seeking to adjudicate Chelsea as a child within the meaning of § 43-247(3)(a). The original petition filed by the State is not included in our record; however, an amended petition filed on September 14, 2012, is included in the record. This amended petition is the operative pleading in this juvenile court case.

In the September 2012 amended petition, the State alleged that Chelsea lacked proper parental care by reason of the faults or habits of her parent or that she was in a situation or engaged in an occupation dangerous to life or limb or injurious to her health or morals because "[o]n or about November 2, 2011, Stacey[,] stepfather of Chelsea[,] was verbally abusive to the child and assaulted her causing injuries. Stacey . . . further threatened to do further harm to Chelsea . . . . Theresa[,] the mother of Chelsea[,] failed to protect the child."

In February and March 2013, a hearing was held on the State's amended petition. At the hearing, Chelsea testified about the events of November 2, 2011. Chelsea's testimony about the incident is reflected above. In addition to Chelsea's testimony, the State offered the testimony of Alex, Chelsea's boyfriend in November 2011. Alex testified that on the night of November 2, Stacey physically assaulted Chelsea. He indicated that he saw Stacey throw a telephone at Chelsea, slap Chelsea in the face, throw a vase across a table at Chelsea, and throw Chelsea against a wall. Alex also testified that Theresa was present during these incidents and did not intervene to stop Stacey or to protect Chelsea.

Theresa and Stacey also testified at the hearing. They both admitted that they were very upset with Chelsea after learning that she was pregnant. However, both Theresa and Stacey denied that Stacey physically assaulted Chelsea in any way. They denied that Stacey slapped Chelsea or threw her against a wall. They testified that Stacey did push a vase across the kitchen table out of frustration, but that he did not mean to hit Chelsea with the vase. Theresa testified that Chelsea did suffer a black eye as a result of being hit with the vase, but that this was an accident.

On April 11, 2013, the county court filed a journal entry adjudicating Chelsea to be a child within the meaning of § 43-247(3)(a). Specifically, the court found that the State had proven that Chelsea was in a situation dangerous to life or limb or injurious to her health or morals as a result of the confrontation between Chelsea and Stacey on November 2, 2011. The court specifically noted that it found the testimony of Chelsea and Alex to be credible and found the testimony of Stacey to not be credible. In addition, the court stated its finding that Theresa "allowed her child to be placed in a situation where she was harmed by an irate step parent."

Theresa appeals from the county court's order here.

## III. ASSIGNMENTS OF ERROR

Theresa argues that the county court erred in determining that the evidence was sufficient to adjudicate Chelsea pursuant to the provisions of § 43-247(3)(a). Specifically, Theresa asserts that the evidence presented at the adjudication hearing revealed that the injuries Chelsea sustained on November 2, 2011, were the result of an accident and that Chelsea "should not remain out of the home based on the disputed allegations on one occasion." Brief for appellant at 8.

## IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id*.

## V. ANALYSIS

Theresa argues that the court erred in adjudicating Chelsea as a child within the meaning of § 43-247(3)(a). Specifically, Theresa argues that the evidence presented at the adjudication hearing demonstrated that Chelsea's injuries were the result of an accident and not the result of an intentional assault. In addition, she argues that there was insufficient evidence to demonstrate that she failed to protect Chelsea in any way. After reviewing the record, we find no merit to Theresa's assertions on appeal.

Section 43-247(3)(a) grants the juvenile court jurisdiction over any juvenile

who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile[.]

To obtain jurisdiction over a juvenile, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). At this stage of the juvenile court proceedings, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of B.R. et al*., 270 Neb. 685, 708 N.W.2d 586 (2005); *In re Interest of Rebekah T. et al.*, 11 Neb. App. 507, 654 N.W.2d 744 (2002).

The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Brian B. et al., supra.*

In the State's amended petition, it alleged that Chelsea lacked proper parental care by reason of the faults or habits of her parent and that she was in a situation or engaged in an occupation dangerous to life or limb or injurious to her health or morals because "[o]n or about November 2, 2011, Stacey[,] stepfather of Chelsea[,] was verbally abusive to the child and assaulted her causing injuries. Stacey . . . further threatened to do further harm to Chelsea . . . . Theresa[,] the mother of Chelsea[,] failed to protect the child." Upon our de novo review of the record, we find that the State presented sufficient evidence to prove the allegations in the petition by a preponderance of the evidence.

At the adjudication hearing, Chelsea testified that on the night of November 2, 2011, Stacey pushed her into a chair; slapped her in the face multiple times; called her stupid; pushed a heavy, "pottery" vase off of a table and toward her face; and "slammed" her up against a wall. It is clear from our record that Chelsea suffered visible injuries as a result of Stacey's actions. She had a black eye and bruises on her body days after the incident. Chelsea also testified that Theresa was present during these incidents and did not intervene to protect her. In fact, Chelsea testified that Theresa did not even make sure that Chelsea was alright after the vase hit her and caused her eye to bleed.

Alex's testimony at the adjudication hearing was very similar to Chelsea's testimony. He testified that on the night of November 2, 2011, Stacey physically assaulted Chelsea. He indicated that he saw Stacey throw a telephone at Chelsea, slap Chelsea in the face, throw a vase across a table at Chelsea, and throw Chelsea against a wall. Alex also testified that Theresa was present during these incidents and did not intervene to stop Stacey or to protect Chelsea.

This evidence, taken together, is sufficient to prove by a preponderance of the evidence the State's allegations that Chelsea lacked proper parental care and was in a situation dangerous to life or limb or injurious to her health or morals. The evidence reveals that on November 2, 2011, Stacey verbally and physically assaulted Chelsea. In addition, the evidence reveals that Theresa failed to intervene and protect Chelsea from Stacey's assault.

We recognize that Theresa presented conflicting evidence about what occurred on the night of November 2, 2011. However, the county court found such evidence to not be credible. In fact, the county court specifically stated that it found Stacey's testimony about the events of that night to not be "credible in light of the weight of the vase and the testimony of the other parties." In addition, the court found "the testimony of Alex . . . to be credible." We give deference to the juvenile court's decision to reject Theresa's version of events. See *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005). When the evidence is in conflict in a juvenile case, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *Id.*

Reviewing the evidence in its totality, we conclude that the record supports the county court's finding that Chelsea comes within the meaning of § 43-247(3)(a). The evidence is sufficient to prove by a preponderance of the evidence that on the night of November 2, 2011, Chelsea lacked proper parental care and was in a situation dangerous to life or limb or injurious to her health and morals, as the State's petition alleges.

## VI. CONCLUSION

Upon our de novo review of the record, we find sufficient evidence to support the county court's finding that it had jurisdiction over Chelsea, and we affirm the order to adjudicate her under § 43-247(3)(a).

AFFIRMED.